UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA BARNES,                                    )
*as personal representative of the*              )
ESTATE OF A.D. BARNES                             )
    Plaintiff,                                )
                                               )          No. 1:14-cv-136
-v-                                               )
                                               )          HONORABLE PAUL L. MALONEY
SUN CHEMICAL CORPORATION,                         )
    Defendant.                                )
_____          )

## AMENDED OPINION AND ORDER DENYING MOTION FOR FEES AND COSTS PURSUANT TO MICHIGAN COURT RULE 2.405

This matter is before the Court on Defendant's motion for attorney fees and costs. (ECF No. 57.) Plaintiff filed a response and a separate motion to disallow costs. (ECF Nos. 60, 61.) The Court heard oral argument on Defendant's motion. (*See* ECF No. 70.)

The Court had previously granted Defendant's motion for summary judgment in this case.[1] (ECF No. 54.) Prior to judgment entering against Plaintiff, Defendant had submitted an offer of judgment to Plaintiff, which was rejected; Defendant now seeks to recover attorney fees and costs under a state offer-of-judgment provision, Michigan Court Rule 2.405 ("Offers to Stipulate to Entry of Judgment").[2] The Court ordered both parties to submit supplemental briefs on the issue of whether the Michigan court rule is substantive or procedural in nature under the *Erie* Doctrine.

---

[1] Plaintiff has filed an appeal in this case. (ECF No. 56.)

[2] The procedural rule provides that "[i]f the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action." Mich. Ct. R. 2.405(D)(1). Tellingly, the rule falls under "Chapter 2: Civil Procedure." The Rules provide a complex procedural mechanism for state courts; Rule 2.405(E), for example, provides that "[c]osts may not be awarded under this rule in a case that has been submitted to case evaluation under Rule 2.403 unless the case evaluation award was not unanimous." *Id.* R. 2.405(E). And Rule 2.403(A)(2) states that "[c]ase evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178." *Id.* R. 2.403(A)(2). The state rules are clearly part of a procedural regime, governed by the Michigan Supreme Court, and ultimately, in the Court's view, have no bearing in federal court.

(ECF No. 63.) If the court rule is substantive, Defendant is entitled to costs and reasonable attorney's fees; if procedural, Defendant is only entitled to costs under the Federal Rules.

I.   **LEGAL FRAMEWORK**

Michigan Court Rule 2.405 provides the following:

**Rule 2.405 Offers to Stipulate to Entry of Judgment**

(A) Definitions. As used in this rule:

(1) "Offer" means a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued. If a party has made more than one offer, the most recent offer controls for the purposes of this rule.

(2) "Counteroffer" means a written reply to an offer, served within 21 days after service of the offer, in which a party rejects an offer of the adverse party and makes his or her own offer.

(3) "Average offer" means the sum of an offer and a counteroffer, divided by two. If no counteroffer is made, the offer shall be used as the average offer.

(4) "Verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the offer of judgment.

(5) "Adjusted verdict" means the verdict plus interest and costs from the filing of the complaint through the date of the offer.

**(6) "Actual costs" means the costs and fees taxable in a civil action and a reasonable attorney fee for services necessitated by the failure to stipulate to the entry of judgment.**

**(B) Offer. Until 28 days before trial, a party may serve on the adverse party a written offer to stipulate to the entry of a judgment for the whole or part of the claim, including interest and costs then accrued.**

**(C) Acceptance or Rejection of Offer.**

(1) To accept, the adverse party, within 21 days after service of the offer, must serve on the other parties a written notice of agreement to stipulate to the entry of the judgment offered, and file the offer, the notice of acceptance, and proof of service of the notice with the court. The court shall enter a judgment according to the terms of the stipulation.

**(2) An offer is rejected if the offeree**

(a) **expressly rejects it in writing, or**

(b) **does not accept it as provided by subrule (C)(1).**

A rejection does not preclude a later offer by either party.

(3) A counteroffer may be accepted or rejected in the same manner as an offer.

**(D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:**

**(1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.**

(2) If the adjusted verdict is more favorable to the offeree than the average offer, the offeror must pay to the offeree the offeree's actual costs incurred in the prosecution or defense of the action. However, an offeree who has not made a counteroffer may not recover actual costs unless the offer was made less than 42 days before trial.

**(3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule.**

(4) Evidence of an offer is admissible only in a proceeding to determine costs.

(5) Proceedings under this rule do not affect a contract or relationship between a party and his or her attorney.

(6) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion

(i) for a new trial,

(ii) too set aside the judgment, or

(iii) for rehearing or reconsideration.

**(E) Relationship to Case Evaluation. Costs may not be awarded under this rule in a case that has been submitted to case evaluation under MCR 2.403 unless the case evaluation award was not unanimous.**

Mich. Ct. R. 2.405 (emphasis added).

The *Erie* Doctrine "requires a federal court sitting in diversity to apply state substantive law and federal procedural law." *Degussa Admixtures, Inc. v. Burnett*, 277 Fed. App'x 530 (2008) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

The Court finds the Eleventh Circuit's framework helpful, as a starting point:

As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case, Florida, alongside federal procedural law. *Erie R.R. Co. v.* Tompkins, 304 U.S. 64 (1938). Under this framework, the disputed provisions of Florida law—Florida's offer of judgment statute; Rule 1.442(c)(2)(F); Rule 1.442(c)(2)(G); and the FDUTPA and its fee-shifting provision—apply only if they are substantive for *Erie* purposes. Accordingly, we must determine the *Erie* status of these provisions before applying them to the case at hand.

We make this determination using two tests. If the Florida law is in conflict with a Federal Rule of Civil Procedure, then we apply the test set forth by *Hanna v. Plumer*, 380 U.S. 460 (1965), under which we follow the federal rule so long as it is valid under the Constitution and the Rules Enabling Act. *Id.* at 472–74. If no federal statute or Federal Rule is on point, then we instead apply the "outcome determinative test" set forth by *Erie* and its progeny, under which we apply the Florida law if its application would be so important to the outcome "that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court."

*Horowitch*, 645 F.3d at 1257–58 (quoting *Gasperini*, 518 U.S. at 428) (other internal citations omitted).

As an initial matter, Defendant has correctly noted that under Supreme Court precedent, Rule 68 does not apply when a defendant *prevails* in a case. *Delta Airlines v. August*, 450 U.S. 346, 352 (1981) ("[I]t is clear that Fed. R. Civ. P. 68 applies only to offers made by the defendant and only to judgments obtained by the plaintiff.").[3] Thus, at least part of the offer-of-judgment rule does not directly conflict with Rule 68.

Under the "American rule," however, attorney fees are not recoverable from the losing party—absent a statutory exception or court order. *E.g.*, Fed. R. Civ. P. 54(d)(1) ("Unless a *federal statute*, *these rules*, or *a court order* provides otherwise, costs—*other than attorney's fees*—should

---

[3] Justice Rehnquist's dissent reads more persuasively in that case, but nonetheless, the Court is bound to follow the law as laid down by the majority. *Id.* at 375 (Rehnquist, J., dissenting) ("[N]o policy argument will convince me that a plaintiff who has refused an offer under Rule 68 and then has a 'take nothing' judgment entered against her should be in a better position than a similar plaintiff who has refused an offer under Rule 68 but obtained a judgment in her favor, although in a lesser amount than that which was offered pursuant to Rule 68.").

be allowed to the prevailing party."); Fed. R. Civ. P. 54(B)–(B)(ii) (emphasis added) ("Unless a statute or a court order provides otherwise, the motion [for attorney's fees and related nontaxable expenses] must . . . specify the judgment and the statute, rule, or other grounds entitling the movant to the award."); *see, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 270 (1975) (As a "general rule . . ., absent statute or enforceable contract, litigants pay their own attorneys' fees.") ("[The American Rule] is deeply rooted in our history and in congressional policy; and it is not for us to invade the *legislature's province* by redistributing litigation costs.").

Nonetheless, with regard to the applicability of state law provisions shifting attorney fees, the Supreme Court has held:

> [I]n an ordinary diversity case where the *state law does not run counter to a valid federal statute or rule of court*, and usually it will not, *state law* denying the right to attorney's fees or giving a right thereto, *which reflects a substantial policy of the state*, should be followed.

*Alyeska*, 421 U.S. at 259 n.31 (emphasis added); *see Degussa*, 277 Fed. App'x at 532. Thus, "[f]ederal courts sitting in diversity . . . customarily will apply state 'fee-shifting rules that embody a *substantive policy*, such as a *statute* which permits a prevailing party in *certain classes of litigation to recover fees*.'" *Degussa*, 277 Fed. App'x at 532 (emphasis added) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)).

"Whether a state law provision is substantive or procedural depends not on where that law is found, but rather . . . on whether that particular provision either creates rights and obligations or is so 'bound up with [state-created] rights and obligations' that it must be considered substantive." *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 575 (6th Cir. 2008) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*, 356 U.S. 525, 535 (1958)).

In a footnote in *Alyeska*, the Supreme Court hypothesized that a substantial policy of the state could be reflected in a "*judicially created rule*, although the question of the proper rule to

govern in awarding attorneys' fees in federal diversity cases *in the absence of state statutory authorization* loses much of its practical significance in light of the fact that most States follow the restrictive American rule." *Alyeska*, 421 U.S. at 259 n.31 (emphasis added). However, *federal judges* do not possess such authority to create rules for awarding attorney fees, which reflects a potential tension if such a rule created by *state judges*, as in this case, can have effect in federal courts. *See infra* Part II.A and note 5; *Tiedel v. Northwestern Michigan Coll.*, 865 F.2d 88, 93–94 (6th Cir. 1988).[4] The Supreme Court also noted, as a general matter, that "it is not for [courts] to invade the *legislature's province* by redistributing litigation costs." *Alyeska*, 421 U.S. at 270.[5]

State *rules of procedure*, particularly those promulgated by a state supreme court, usually have no effect in federal courts because they do not embody a "substantial policy of the state"; and even where a state *statute* is "procedural in nature," the Court will apply the federal procedural rule. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002) ("Ohio Revised Statute § 2323.51 is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct."); *Shropshire*, 550 F.3d at 573 (holding that a "closed-head injury provision" is procedural and does not apply in federal court); *see also Nielson v. Bob Schmidt Homes, Inc.*, 590 N.E.2d 1291 (Ohio Ct. App. 1990) (noting the fact that Ohio's

---

[4] The Court ultimately views the footnote as hypothetical dicta, and regardless, the Michigan Court Rules are not intended to *create* substantial policy; rather, those rules are intended to "govern practice and procedure in all courts established by the constitution and laws of the State of Michigan. Rules stated to be applicable only in a specific court or only to a specific type of proceeding apply only to that court or to that type of proceeding." Mich. Ct. R. 2.405. A few rules also *facilitate* substantial policy of the state, such as the procedures for substantive tort law found in Mich. Ct. R. 2.112(K); however, the offer-of-judgment provision does not facilitate substantial policy of the state.
[5] The Court also noted: "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. We are asked to fashion a far-reaching exception to this 'American Rule'; but having considered its origin and development, we are convinced that it would be *inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation* in the manner and to the extent urged by respondents and approved by the Court of Appeals." *Id.* at 247. Thus, the Supreme Court notes, and the Federal Rules allow for, "legislative" action at the federal level to modify the "American Rule"—particularly in those cases "limited to certain classes of litigation." *Id.* But that's not the case here, as the Court will discuss later. The *State* Judiciary choose to enact a procedural rule to reallocate the burdens of litigation.

"frivolous conduct statute"—the statute at issue in *First Bank of Marietta*—"applies to all civil actions").

This matter appears to be an issue of first impression in the Sixth Circuit, though Defendant cites to a few cases in other circuits where courts have held state offer-of-judgment or other damage provisions procedural.[6]

## II.   ANALYSIS

The Court notes that the legal issue before it represents a close question. This is, in part, because "[t]here is no clear criterion for deciding whether a particular state rule is 'substantive' for purposes of deciding whether *Erie* requires that it be enforced in federal diversity litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002) (quoting *Healy*, 60 F.3d at 310). Definitive guidance from the Sixth Circuit would be of significant assistance to District Judges.

On balance, the Court finds that Michigan Court Rule 2.405 is procedural, and should not be applied in federal court. The Court reaches this decision, for the following reasons: first, the Sixth Circuit's ancillary guidance suggests that the court rule at issue is procedural, and not substantive; second, nearly all other circuit case law can be distinguished from the unique nature of Michigan Court Rule 2.405; third, when left with the Supreme Court's broad guidance on the issue, in the absence of specific guidance from the Sixth Circuit, the Court concludes "that failure to apply [the Rule] would [not] unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court," in light of *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996); and finally, the *application* of the rule as substantive would "unfairly discriminate against citizens of the forum State," because while the state rules *mandate*

---

[6] The Court will discuss those cases, and the guidance gleaned from those cases, below.

case evaluation *prior* to an award under the offer-of-judgment provision, federal rules and case law do not; non-resident defendants who remove to federal court can (and as here, often do) avoid the case-evaluation requirement altogether.

### A.  Sixth Circuit Guidance

Unlike its sister circuits, the Sixth has not addressed whether state offer-of-judgment rules are substantive or procedural in nature.

Plaintiff rests nearly her entire argument—that the rule at issue here is procedural—on the fact that the rule is only found in the Michigan Court Rules, with no corresponding statutory authority. (*See* ECF No. 60.)

The Sixth Circuit has generally held that state *rules of procedure*, particularly those promulgated by a state supreme court, have no effect in federal courts because either those rules (a) conflict with the federal rules or (b) do not "reflect a substantial policy of the state"; and even where a state *statute* is "procedural in nature," the Court will apply the federal procedural rule. *E.g., First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002) ("Ohio Revised Statute § 2323.51 is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct."); *see also Nielson v. Bob Schmidt Homes, Inc.*, 590 N.E.2d 1291 (Ohio Ct. App. 1990) (noting the fact that Ohio's "frivolous conduct statute"—the statute at issue in *First Bank of Marietta*—"applie[d] to all civil actions").).

The Sixth Circuit has stated that "[f]ederal courts sitting in diversity . . . customarily will apply state 'fee-shifting rules that embody a *substantive policy*, such as a *statute* which permits a prevailing party in *certain classes of litigation to recover fees*.'" *Degussa*, 277 Fed. App'x at 532 (emphasis added) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)).

The Sixth Circuit previously expressed skepticism that a Michigan Court Rule—even if it involves whether an attorney has a right to make a binding settlement—can be substantive. In *McKelvie v. City of Mount Clemens* (unpublished), the Sixth Circuit overruled the District Court's application of Michigan Court Rule 2.507(H) in a diversity case, which provided:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open Court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

940 F.2d 661, 665 (1991) (table). The Court continued with the following:

> M.C.R. § 2.507(H) is a Michigan court rule. We are satisfied that the district court erred in relying on a rule of Michigan court procedure. *See Energy Acquisition Corp. v. Harbor Ins. Co.*, No. 689103341 CA, slip op. at 8 (W.D. Mich. Sept. 4, 1990) (district court expressing doubts as to whether § 2.507(H) applies to a federal diversity action).

> Michigan Court Rule § 2.507(H) is not a rule of substantive law. The court rule in question does "govern *practice and procedure* in all courts established by the constitution and laws of the State of Michigan." M.C.R. § 1.103 (emphasis added). Under the *Erie* doctrine, federal courts sitting on diversity apply substantive laws of the state, not procedural laws of court.

*Id.*

Thus, the Sixth Circuit placed weight on the defining language of the rules; the Court's cited to the section entitled "Applicability," which defines the *purpose* of the court rules: "[to] govern *practice and procedure* in all courts established by the constitution and laws of the State of Michigan." Indeed, "[t]he Michigan Rules of Court are the rules adopted by the Michigan Supreme Court to govern Michigan's legal system . . . The purpose of the Court Rules is to establish *uniform rules and procedures for all levels of Michigan's court system*." MICH. COURTS, "Michigan Court Rules and Other Rules,"

http://courts.mi.gov/courts/michigansupremecourt/rules/pages/current-court-rules.aspx/ (last visited Nov. 9, 2015) (emphasis added). Arguably, then, the very purpose and function of the rules does not reflect the desire or even ability of the Court to *create* "*substantive policy* of the state." *See, e.g., Degussa*, 277 Fed. App'x at 532.

The fact that the rule in this case is found in the Michigan Court Rules, with its accompanying purpose, is strong *evidence* that the rule is procedural, but that does not alone suffice to hold that rule procedural. The Sixth Circuit, subsequent to *McKelvie*, noted that "[w]hether a state law provision is substantive or procedural depends *not on where that law is found*, but rather . . . on whether that particular provision either creates rights and obligations or is so 'bound up with [state-created] rights and obligations' that it must be considered substantive." *Shropshire*, 550 F.3d at 575 (6th Cir. 2008) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*, 356 U.S. 525, 535 (1958)) (emphasis added).[7] And more recently, the Sixth Circuit opined that "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Auto. Support Group, LLC v. Hightower*, 503 Fed. App'x 411, n.5 (6th Cir. 2012) ("State rules governing attorney fee awards are generally considered to be substantive law and therefore apply in federal court diversity actions under the *Erie* doctrine."). However, the citation to this case clearly relates to those rules that "function as a part of the State's definition of *substantive rights and remedies*," such as Michigan Court Rule 2.112(K)[8], which is not on point with the rule at issue here. *Id.*

Regardless, a deeper dive for relevant Sixth Circuit case law is required to resolve the issue.

---

[7] This is consistent with Justice Stevens's view expressed in *Shady Grove*: "Where a state law is bound up in a 'framework of substantive rights or remedies,' that law is effectively substantive, even if it exerts its force through procedural levers.'" *Jones*, 845 F. Supp. 2d 852 (W.D. Mich. 2012) (quoting *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010).

[8] *See infra* notes 11–14 and accompanying text.

In the aftermath of *McKelvie*, much of the Sixth Circuit case law concerned the application of Michigan court mediation (or case evaluation) rules, which have been incorporated in the local rules. *See* W.D. Mich. LCivR 16.5.

The Sixth Circuit opined that a prior version of the case evaluation rules[9] were procedural: "We think, however, that there are compelling reasons to conclude, contrary to the opinion of the drafters of Western District of Michigan Local Rule 42, that the Michigan mediation process, codified at Mich. Comp. Laws §§ 600.4951–4969, is "procedural" and not "substantive," and thus is not, under *Erie*, applicable in this diversity case." *Johnson v. Fruit Belt Elec.*, 47 F.3d 1169, 1175 (6th Cir. 1995). The Court went on to note, though, that "we need not decide this issue." *Id.*

Subsequently, however, the Sixth Circuit noted that the Michigan Court Rules had been amended, and remanded the issue of whether attorney fees were warranted under the Michigan Court Rules and local federal rules. *Via The Web Designs, LLC v. Beauticontrol Cosmetics, Inc.*, 148 Fed. App'x 483 (6th Cir. 2005); in that opinion, the Court noted that "'[i]t remains to be seen whether under the facts of this case an award of attorney's fees is permissible.' *Compare Tiedel v. Northwestern Michigan Coll.*, 865 F.2d 88, 93–94 (6th Cir. 1988) *with Mencer v. Princeton Square Apartments*, 228 F.3d 631, 636 (6th Cir. 2000)." Thus, the Court must look to *Tiedel* and *Mencer*.

In *Tiedel*, the Court held that "a district court is *not* empowered to enact a local rule giving itself the authority to award attorneys' fees." 865 F.2d at 94 (emphasis added). The Court in *Mencer* distinguished the facts before it from those in *Tiedel*. Because "plaintiffs requested that their claim be referred to mediation . . . according to Mich. Ct. R. 2.403," "the trial court was . . . authorized by the consent of the parties," and justified in "refus[ing] to revise the parties' chosen mediation strategy." 228 F.3d at 636–37.

---

[9] Interestingly, the evaluation rules are intertwined with the offer-of-judgment rules in the Michigan Court Rules, as the Court will discuss later. *See infra* Part II.C.

Further, the Sixth Circuit affirmed the following language in *Mencer*: "We have previously recognized that fee-shifting mechanisms are mighty levers to be used only sparingly. *Tiedel v. Northwestern Mich. Coll.*, 865 F.2d 88 (6th Cir. 1988). That is why the 'American rule' broadly applies in federal courts, whereby '*absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees.*'" 228 F.3d 631, 636 (6th Cir. 2000) (quoting *Alyeska*, 421 U.S. at 257).

It appears, then, that the Sixth Circuit finds it acceptable for courts to apply state court mediation (or case evaluation) rules consistent with the local federal rules if both parties *choose* to be bound by them, but nothing would indicate that the Sixth Circuit found the underlying state rules to be substantive law that the Court *was duty-bound* to apply in the absence of consent.

In *this* case, Plaintiff rests neither on an agreement to be bound by the offer-of-judgment provision found in the Michigan Court Rules nor "express statutory language." *See id.*[10]

The Court recognizes that a few federal district courts in Michigan have applied a couple of Michigan's court rules as "substantive." *See, e.g., Greenwich Ins. Co. v. Hogan*, 351 F. Supp. 2d 736, 739 (holding that Michigan Court Rule 2.112(K), governing notice of non-party fault, applied in a federal diversity case and noting that "[v]iewing MCR 2.112(K) as a purely procedural matter . . . would promote the very forum shopping and inequitable administration of the laws *Erie* sought to avoid."); *Stonemor Operating, LLC v. Bush*, No. 1:08-cv-631, 2014 WL 4388347, at *6 (W.D. Mich. Sept. 5, 2015) (citing *Greenwich*, 351 F. Supp. 2d at 739, for the proposition that MCR 2.112(K) was "part and parcel of Michigan's substantive tort law" because failing to include it as such would "result in litigation differing materially depending on whether a suit was brought in state court or as a diversity action in federal court."); *see also Hall v. Greyhound Lines, Inc.*,

---

[10] The parties chose *not* to go through the state's case evaluation regime, which is a necessary condition for an award under the offer-of-judgment section for this type of tort case in state court. *See infra* note 23 and accompanying text.

No. 5:89-cv-89, 1990 U.S. Dist. LEXIS 7594, at *3–4 (W.D. Mich. June 22, 1990) (applying MCR 2.507(H) in a federal diversity case and noting *Erie* but without giving an explicit analysis of why the rule applies under *Erie*). *But see Rheault v. Lufthansa German Airlines*, 899 F. Supp. 325, 328 (E.D. Mich. 1995) (MCR 2.507(H) is not substantive)[11]; *Alexander Associates, Inc. v. FCMP, Inc.*, 2012 U.S. Dist. LEXIS 41435, *31 (E.D. Mich. Mar. 27, 2012) (same).

However, Michigan Court Rule 2.112(K), for example, is undeniably substantive because it is "part and parcel of Michigan's substantive tort law."[12] *Stonemor Operating, LLC*, 2014 WL 4388347, at *6. And there is a split concerning Michigan Court Rule 2.507(H), with two out of three courts finding that rule procedural.[13]

In conclusion, the balance of authority in the Sixth Circuit cuts in favor of finding Michigan Court Rule 2.405 procedural, because the Sixth Circuit has previously expressed skepticism that Michigan Court Rules, as a general matter, "embody substantive policy" of the state. More specifically, *this* rule does not "'embody a *substantive policy*, such as a *statute* which permits a prevailing party in *certain classes of litigation to recover fees*.'" *Degussa*, 277 Fed. App'x at 532 (emphasis added) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991)). While a few rules *embody* or *facilitate* substantive policy of the state legislature, such as Rule 2.112(K), the rules themselves are not the vehicle[14] to *create* substantive policy applicable in federal court, particularly without limitation to "certain classes of litigation." *Id.*; *see McKelvie* 940 F.2d at 661;

---

[11] The Court in *Rheault* cited approvingly to *McKelvie*: "M.C.R. 2.507(H) is not a rule of substantive law, but rather is one of Michigan court procedure. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The Michigan Court Rules 'govern practice and procedure in all courts established by the constitution of laws of the State of Michigan.' M.C.R. § 1.103. Under the *Erie* doctrine, federal courts sitting in diversity apply substantive laws of the state, but not procedural laws of court." *Rheault v. Lufthansa German Airlines*, 899 F. Supp. 325, 328 (E.D. Mich. 1995).

[12] The Rule has a clear relationship to "substantial policy" of the state because it "applies to actions based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death to which MCL 600.2957 and MCL 600.6304, as amended by 1995 PA 249, apply." Mich. Ct. R. 2.112(K).

[13] Respectfully, the Court agrees with the courts in the Eastern District, which found the rule to be procedural.

[14] Of course, in diversity cases when construing substantive Michigan law, the Michigan Supreme Court provides the binding authority. However, the Michigan Supreme Court does not provide binding authority on *rules of procedure* in federal courts.

*Johnson*, 47 F.3d at 1175; *see also Tiedel*, 865 F.2d at 88. And again, unlike Michigan Court Rule 2.112(K), *this* rule is not "'so bound up with [state-created] rights and obligations' that it must be considered substantive." *Shropshire*, 550 F.3d at 575 (6th Cir. 2008) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op*, 356 U.S. 525, 535 (1958)). In addition, while courts can allow parties to voluntarily choose to apply state court mediation rules if local federal rules allow, "fee-shifting mechanisms are mighty levels to be used only sparingly"; and "'*absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees.*'" *Tiedel*, 865 F.2d at 88; *Mencer*, 228 F.3d at 636 (quoting *Alyeska*, 421 U.S. at 257).

Ultimately, 2.405 is a standalone procedural court rule, promulgated by the Michigan Supreme Court[15] under its limited authority to establish "practice and procedure in all courts established by the constitution and laws of the State of Michigan," divorced from any statutory demand or legislative initiative, and the rule delineates a complicated offer-of-judgment procedural process that applies to *all* classes of litigation.

### B.  Other Circuit Guidance

Defendant admittedly cites case law from other circuits that suggest that state offer-of-judgment provisions ought to be applied as substantive law, generally. Unlike with the court rule in this case, however, it appears that all of the circuits—with the possible exception of the Third Circuit—analyzed state statutes alone or state rules of civil procedure with corresponding statutory authority. *See, e.g., MRO Commc'ns v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1279 (9th Cir. 1999) (("[T]he same principle should apply to a *state statute* that awards attorneys' fees to a defendant whose offer of judgment has been rejected in a case where the plaintiff has filed supplemental state law claims in federal court." (emphasis added)); *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273,

---

[15] If *federal judges* do not possess authority to create rules for awarding attorney fees, *see Tiedel*, 865 F.2d at 94, then arguably any such authority of state Supreme Court justices does not extend into the federal courts.

1279 (10th Cir. 2011) ("Oklahoma substantive law, specifically Okla. Stat. Tit. 12, § 1101.1(B)(3), governs [the] claim."); *Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1527 (11th Cir. 1990) ("The district court was correct in awarding defendant . . . attorney fees" under "Florida Statute § 45.061."). After an exhaustive review, the Court finds that the court rule in *this* case can be distinguished from the cited case law.[16] The Court will briefly discuss the relevant case law.

### i.   Ninth Circuit

Defendant highlights a Ninth Circuit opinion, *MRO Commc'ns v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1279 (9th Cir. 1999). The Court cited language from *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y* in holding that the a district court did not abuse is discretion in applying Nevada's Offer of Judgment statute, Nev. Rev. Stat. § 17.115, and corresponding procedural rule, Nev. R. Civ. P. 68. In *Alyeska*, the Supreme Court noted:

> Prior to the decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), this Court held that a *state statute* requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts: "[I]t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts." *People of Sioux Cty. v. Nat'l Surety Co.*, 276 U.S. 238, 243 (1928). The limitations on the awards of attorneys' fees by federal courts deriving from the 1853 Act were found not to bar the award. *Id.* at 243–244. We see nothing after *Erie* requiring a departure from this result. *See Hanna v. Plummer*, 380 U.S. 460, 407–468 (1965).

421 U.S. at 259 n.31 (emphasis added).

The Ninth Circuit then held that "[w]e are persuaded that the same principle should apply to a *state statute* that awards attorneys' fees to a defendant whose offer of judgment has been rejected in a case where the plaintiff has filed supplemental state law claims in federal court."

---

[16] In any event, other circuit case law is obviously not binding on this court. Sixth Circuit law controls.

*MRO Commc'ns*, 197 F.3d at 1279 (9th Cir. 1999) (emphasis added) ("Nevada law provides that a defendant shall be awarded reasonable attorneys' fees incurred from the time of an offer of judgment if the plaintiff rejects it and fails to receive a more favorable result. *See* Nev. Rev. Stat. § 17.115; *see also* Nev. R. Civ. P. 68."). The Nevada Rules of Civil Procedure have a corresponding, matching provision, Nevada Rule 68, but it stems from statutory authority. This was crucial to the Court's holding, with repeated references to state "law," and the "state statute" at issue in that case. *See, e.g., MRO Commc'ns*, 197 F.3d at 1283.

Defendant cites another case, *Kalenowsky v. Canyon Capital Funding Corp.* for the proposition that "Nevada Rule 68, a procedural rule promulgated by the state's highest court, is '*Erie*-substantive.'" (ECF No. 66 at PageID.1722.) However, the Court there suggested that the underlying "substantive policy" was the statute itself, and Nevada Rule 68 simply flowed from that statute. *See Kalenowsky*, No. 3:11-CV-00797, 2013 WL 5741083, at *3 (D. Nev. Oct. 22, 2013) ("The corresponding state statute . . . permits an award of reasonable attorney's fees.") ("Although section 17.115 and Nevada Rule 68 are *Erie*-substantive, they can, in some cases, conflict with Federal Rule 68, which governs the penalties for rejecting offers of judgment in federal court."). By contrast, Michigan Court Rule 2.405 has no underlying statutory authority or policy. Rather, as the Court has discussed, the provision is a complicated procedural one promulgated by the Michigan Supreme Court.

### ii. *Third Circuit*

Defendants next highlight a Third Circuit opinion, *Fauber v. KEM Transp. & Equip. Co.*, 876 F.3d 327 (3d Cir. 1989). The Court cited language from *Guaranty Trust Co. v. York* in holding that Pennsylvania Rule of Civil Procedure 238(f) was substantive, and applied "delay damages" in a diversity case. *Id.* The Court noted that "[t]he test of whether a rule of law is substantive or

procedural for *Erie* purposes is neither its state label nor the purpose the state ascribes to it." *Id.* at 331; *see Jarvis v. Johnson*, 668 F.2d 740 (3d Cir. 1982).[17] [18] The Court then noted that "[t]he proper inquiry is 'whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.'" *Id.* at 331 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 n. 9 (1965)).

However, the Court specifically found that the situation there because to hold otherwise would "induce litigants with a choice of forums to pick one over the other." *Id.* Here, as the Court will discuss, failure to apply an offer-of-judgment procedure would be unlikely to impact the choice of forums. *See infra* Part II.C.

### iii. Eleventh Circuit

Defendant further highlights an Eleventh Circuit opinion, *Horowitch v. Diamond Aircraft Indus.*, 645 F.3d 1254 (11th Cir. 2011). The Court held that a state statute *and* a corresponding procedural rule were both "substantive for *Erie* purposes" because "[t]he outcome determinative

---

[17] "[I]n determining whether a federal court in a diversity case should apply state law under the Rules of Decision Act, the mere labeling of the state law as 'substantive' or 'procedural' does not advance the analysis. Rather, we must approach a problem such as is presented by the instant case by considering how the constitutional and policy concerns that motivated the Court in *Erie* and its progeny are implicated by the application or nonapplication of the particular state rule at issue. . . . As indicated by the preceding discussion, these concerns include (1) the effect of application of the state or federal rule on the outcome of the litigation; (2) the likelihood that divergent state and federal rules will result in forum shopping; and (3) the existence of any overriding federal interest in the application of the federal rule." *Jarvis*, 668 F.2d at 743–44.

[18] Interestingly, the Supreme Court had previously found that Pennsylvania State Courts could not apply that same rule in a Federal Employers' Liability Act (FELA) claim because it conflicted with federal law, which did not provide for "prejudgment interest." *Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 336 (1988) ("The Pennsylvania courts cannot avoid the application of federal law to determine the availability of prejudgment interest under the FELA by characterizing Rule 238 as nothing more than a procedural device to relieve court congestion."). This suggests that a rule can be applied in some cases, but not others, and the Court here finds that this is an inappropriate case to apply the rule.

test yields the conclusion that it would be unfair not to apply the rule in federal court." *Horowitch*, 645 F.3d at 1258.

Nonetheless, the Court held that a corresponding rule requiring an offer to "include a certificate of service in the form" was "procedural for *Erie* purposes and therefore d[id] not apply in federal court." *Id.* The Circuit also sustained the application of another Florida *statute* awarding attorney's fees. *See Tanker Mgmt, Inc. v. Brunson*, 918 F.3d 1524 (11th Cir. 1990).

Here, again, Michigan Court Rule 2.405 has no corresponding or underlying statute or policy directive, and it would *not* be unfair to refuse to apply the rule in federal court.

### iv. Tenth Circuit

As Defendant notes, the Tenth Circuit recently held a state statutory offer-of-judgment rule similar to that in Michigan as "substantive" for *Erie* purposes. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273 (10th Cir. 2011). The Tenth Circuit concluded that the underlying fees addressed in the offer of judgment *statute* were substantive fees because they impacted the outcome of litigation; the Court concluded that if the rule "were to apply in state but not federal court, a state court defendant would have an advantage that is unavailable to a defendant with an identical claim in federal court under diversity jurisdiction." *Id.* at 1280. The Court further noted that "[b]ecause there is no federal rule providing a defendant with this same protection, we must conclude that not applying this statute would lead to forum shopping." *Id.* Here, however, again, there is no statute and the failure to apply the rule would not create forum shopping.

### v. Fifth Circuit

The Fifth Circuit appears slightly more hesitant than the other circuits to hold attorney fees provisions as "substantive." The Court in *Utica Lloyd's of Texas v. Mitchell* held that "a party may not rely on the Texas [Declaratory Judgment Act] to authorize attorney's fees in a diversity case

because the statute is not substantive law." 138 F.3d 208 (5th Cir. 1998). And in *Comacho v. Texas Workforce Comm'n*, the Fifth Circuit subsequently stated:

> The [Declaratory Judgment Act] *does conflict with a federal policy*: the "American Rule" that "parties are ordinarily required to bear their own attorney's fees." . . . In light of the American Rule, generally applied in federal court, we have been instructed that state law does not always control the issue of attorney's fees. *See Chambers*, 501 U.S. at 51–52. Rather, we are to apply state attorney's fee law only when it "embod[ies] a substantive policy." *Id.* at 52.

> The DJA does not represent "substantive policy" under *Chambers*. The Supreme Court explained in *Chambers* that substantive fee-shifting statutes include those "which permit[] a prevailing party in certain classes of litigation to recover fees." *Id.*

445 F.3d 407 (5th Cir. 2006). While the Fifth Circuit "recognize[s] that only fee-shifting statutes limiting fee awards to prevailing parties are substantive for *Erie* purposes," " not all state attorney's fees laws are applicable in federal court under *Erie* . . . [and not] all fee-shifting rules implicate the problem of forum shopping." *Id.* at 411–12. Thus, the Fifth Circuit case law cuts slightly against Plaintiff.

### vi.  Seventh Circuit

The seminal Seventh Circuit case that Defendant cites is *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305 (7th Cir. 1995). The Court, in a written opinion by Judge Posner, noted that "the terms 'substance' and 'procedure' are conclusions rather than algorithms." *Id.* at 311.

In *Healy*, "[t]he legal basis for the demand was Wis. Stat. §§ 807.01(3), (4)." *S.A. Healy Co.*, 60 F.3d at 307. Further, the Court there recognized that "there is no clear criterion for deciding a particular state rule is 'substantive.'" *Id.* at 310. In fact, the Court stated that while there are "two classes of pretty clear cases, . . . our case falls in neither one." *Id.*

> The first consists of cases in which the state rule is in actual conflict with one of the Federal Rules of Civil Procedure, so that enforcing the state rule would knock out the federal rule. . . .
>
> The second class of pretty easy cases is where the state procedural rule, though undeniably "procedural" in the ordinary sense of the term, is limited to a particular substantive area, such as contract law.

*Id.* Here, as in that case, "[t]here is no direct conflict between the [Michigan] rule concerning [defendant's] settlement demands and any rule of federal procedure," consistent with *Delta Airlines*, 450 U.S. at 352; "[y]et at the same time the [Michigan] rule is not confined to any particular area of the law such as insurance contracts or products liability or medical malpractice." *Id.*

The Court then suggested that since the facts in that case did not fall in either of the two "easy" categories, it

> must go back to first principles—the course recommended in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53 (1980)—and thus ask two questions: Is the Wisconsin rule so likely to dictate outcomes that it will cause a lot of forum shopping (or, if forum shopping is somehow infeasible, cause like cases to be decided differently) unless it is made applicable to diversity cases and so ceases to be a factor in the choice between state and federal court? Is it so entwined with procedures prescribed by the federal rules that it is likely to impair the integrity of federal procedure if it is applied in diversity cases? If the answer to the first question is "yes" and to the second "no," then we can be reasonably confident that application of the Wisconsin rule in diversity cases would be consistent with the principles of *Erie* and the Rules Enabling Act. . . . Those in fact are our answers, . . . [s]o we need not consider the more difficult question of what to do when the answer to *both* questions is "yes."

*S.A. Healy Co.*, 60 F.3d at 310–11.

Again, the Court will note that the issues in *Walker* concerned a state statute. *Walker*, 446 U.S. at 751 ("In contrast to [Federal] Rule 3, the Oklahoma statute is a statement of a substantive decision by the State that actual service on, and accordingly actual notice by, the defendant is an

integral part of the several policies served by the statute of limitations. . . . As such, the service rule must be considered part and parcel of the statute of limitations. Rule 3 does not replace such policy determinations found in state law. Rule 3 and Okla. Stat., Tit. 12, § 97 (1971) can exist side by side.").

This Court recognizes that the Sixth Circuit might ultimately adopt the approach of a sister circuit and *extend* that approach to apply Michigan Court Rule 2.405 as substantive, but the rule is distinguishable from each of the cited cases. Even employing the Supreme Court's framework as supplemented by circuit case law, as the Court will now do, the Court finds the rule at issue here to be procedural, and not substantive.

### C.  Supreme Court's Framework as Laid Out by Other Circuits

#### i.  Failing to apply the rule as substantive would not "likely cause a plaintiff to choose federal court."

Defendant urges the Court to frame its analysis using the Seventh Circuit's approach: (1) "[i]s the [Michigan] rule so likely to dictate outcomes that it will cause a lot of forum shopping (or, if forum shopping is somehow infeasible, cause like cases to be decided differently) unless it is made applicable to diversity cases and so ceases to be a factor in the choice between state and federal court?"; (2) [i]s [the Michigan rule] so entwined with procedures prescribed by the federal rules that it is likely to impair the integrity of federal procedure if it is applied in diversity cases?" (ECF No. 66 at PageID.1719 (citing *S.A. Healy Co.*, 60 F.3d at 309).)

Other circuits employ similarly phrased tests. The Eleventh Circuit, for example, frames the first question in the following manner: "If no federal statute or Federal Rule is on point, then we instead apply the 'outcome determinative test' set forth by *Erie* and its progeny, under which we apply the Florida law of its application would be so important to the outcome 'that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a

plaintiff to choose the federal court.'" *Horowitch*, 289 F.3d at 1307 (quoting *Gasperini*, 517 U.S. at 428). Because the Eleventh relies verbatim on Supreme Court guidance, the Court will use that framework, and determine whether the "failure to apply [the Rule] would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court." *Gasperini*, 518 U.S. at 428.

The answer to the forum-shopping question is, in the Court's view, clearly "no." Forum shopping should not be "presumed," as "[not] all fee-shifting rules implicate the problem of forum shopping." *Comacho*, 445 F.3d at 411–12.

Initially, it bears emphasis that Michigan Court Rule 2.405 applies equally to plaintiffs and defendants. That is, either party can utilize the offer-of-judgment provision in state court.

More important, though, a holding that the offer-of-judgment provision is "procedural" is not "likely to cause a plaintiff to choose the federal court," because only plaintiffs with self-perceived "weak" cases,[19] stating a federal cause of action or sufficient state cause of action against a diverse defendant, would (or could) purposefully choose to *avoid* a possible negative application of the provision by filing in federal court.

The Court highly doubts that when faced with a multitude of considerations, the absence of a very hypothetical application of a state offer-of-judgment provision—which can be to the plaintiff's detriment *or* benefit—is going to "be likely to cause a plaintiff to choose the federal court." *Gasperini*, 518 U.S. at 428. Indeed, as the Court noted earlier, defendants can also take advantage of the federal offer-of-judgment provision in federal court in many cases. *See Delta Airlines*, 450 U.S. at 352 ("[I]t is clear that Fed. R. Civ. P. 68 applies only to *offers made by the defendant* and only to judgments obtained by the plaintiff." (emphasis added)). Given that

---

[19] Plaintiffs with self-perceived "strong" cases would arguably want to take advantage of the offer-of-judgment provision as a sword, not a shield.

additional caveat, a plaintiff seeking to avoid the provision would only choose to file in federal court if she wanted to avoid a hypothetical offer made by the defendant *and* a hypothetical judgment obtained by the defendant. This alone, in a multitude of litigation factors, almost assuredly would not "cause a plaintiff to choose federal court."[20] *See Gasperini*, 518 U.S. at 428.

The Court notes that even, for the sake of argument, if a plaintiff viewed the offer-of-judgment provision as one *reason* to "to choose federal court," other factors may weigh against such a filing.[21]

Indeed, here, to the extent Plaintiffs in this case felt they had a weak case at the time of filing, *Plaintiff filed in state court*, and *Defendant removed to federal court*. Simply put, a very hypothetical adverse offer-of-judgment ruling is not "likely to cause a plaintiff to choose the federal court." At a minimum, it's no more likely that a plaintiff would choose federal court to avoid the possibility of the provision applying in an adverse manner than state court to seek the possible positive application of that provision.

### ii. *Failing to apply the rule as substantive would not "unfairly discriminate against citizens of the forum State."*

The next question, thus, is whether the "failure to apply [the Rule] would unfairly discriminate against citizens of the forum State." *Gasperini*, 518 U.S. at 428.

---

[20] The Court will note that the fact this issue is one of first impression reflects the infrequency of the application of the rule, at least in federal court.

[21] The Court will note that the Supreme Court's test and case law arising from that test provides very little guidance to answer what is emphatically an empirical question: whether the failure to apply a state-law provision, which is one factor in isolation, will be "*likely to cause* a plaintiff to choose federal court." Courts often seem to simply assume that the failure to apply a minor provision would be "*likely to cause* a plaintiff to choose federal court," without discussion of any other factors plaintiffs consider when choosing where to file. It's quite possible that in many of these cases, as an empirical matter, the failure to apply a provision is actually quite inconsequential in the majority of filing decisions, which are inherently individualized. A few examples that *may* factor against filing in federal court include heightened pleading standards and higher barriers to relief under the Federal Rules, which is why diversity cases more often land in federal court because of removal. Yet it's nearly impossible to isolate one provision and say that the failure to apply that one provision will be "*likely to cause* a plaintiff to choose federal court."

In this case, again, Plaintiff filed in state court, and Defendant removed to federal court. Thus, "unfair discriminat[ion]," if there is any, would not apply to *this* Defendant because it had the option to remove to federal court should it have viewed the offer-of-judgment provision as the holy grail. *Id.* The Court recognizes, though, that it must think in broader terms because its ruling has the potential to affect other citizens of the forum State.

As the Court has alluded to, this is a closer call, as non-resident defendants can remove to federal court, whereas resident defendants cannot. However, there are too many uncertainties and contingencies to hold that *failing to apply* the offer-of-judgment rule "*unfairly* discriminate[s] *against citizens* of the forum State." *Id.* First, again, both defendants and plaintiffs can attempt to take advantage of the offer-of-judgment rule. The Court has already discussed why it would be unlikely that the failure to apply the provision would cause *plaintiffs* to choose federal court. *See supra* notes 19–22 and accompanying text.

And since resident defendants cannot remove to federal court, only those resident-defendants who want to *avoid* the offer-of-judgment provision altogether would "miss out." However, many defendants inevitably accept an offer of judgment. An offer of judgment does not include the entitlement to fees and costs; only the subsequent rejection of the offer would result in mandatory costs and fees. Thus, the only class of resident-defendants that would be anxious to remove are those who would not want to be potentially on the hook under the offer-of-judgment provision in state court—those Defendants who have very weak cases to begin with.

Further, resident-defendants would not face "unfair discrimination" that *arises* from the failure to apply an offer-of-judgment rule against non-resident defendants in federal court. Any

discrimination *arises* from the fact that resident defendants cannot remove in the first place, as Defendant did here. *See id.*[22]

The standard is not whether the failure to apply the rule would result in "discrimination," generally. The Court will concede that at the distant margins, failure to apply the rule might result in some form of discrimination. The standard is, emphatically, however, whether the "failure to apply [the Rule] *would unfairly* discriminate *against citizens of the forum State*." *Gasperini*, 518 U.S. at 428. The Court finds that the *failure to apply* the provision is a far cry from "unfair discrimination" *against citizens* of the forum State, and any discrimination is far from certain. In fact, the opposite may be true; that is, applying the rule may actually cause relatively more "unfair discrimination" against citizens of the forum State.

Michigan Court rules *mandate* case evaluation under its procedures for tort cases filed in circuit court. Mich. Ct. R. 2.403(A)(2) ("[C]ase evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178."). Plaintiff filed this tort case in state circuit court, and Defendant chose to remove. *See id.* Had the case remained in state court, however, the parties would have faced *mandatory* case evaluation *before* either party could *possibly* recover under the offer-of-judgment provision. *See* Mich Ct. R. 2.405(E) ("Costs *may not be awarded* in a case that has been submitted to case evaluation under MCR 2.403 unless the case evaluation award was not unanimous." (emphasis added)).

By contrast, the local federal rules state that "[c]ertain tort cases in which the rule of decision is supplied by Michigan law must be submitted to case evaluation, *unless* the parties

---

[22] Justice Scalia once opined: "[D]ivergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure. Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court." *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1448 (2010).

unanimously agree to submit the case to Voluntary Facilitation Mediation." W.D. Mich. LCivR 16.5(a). In accordance with that rule, the parties chose to submit the case to Voluntary Facilitation Mediation precisely to *avoid case evaluation*—an option not available to either party had the case remained in state court. *Id.*; (ECF No. 11 at PageID.49).[23]

Thus, if non-resident defendants, simply by removing to federal court, are entitled to an offer-of-judgment award *without having to first go to case evaluation*, then that *by itself* may "unfairly discriminate against citizens of the forum state," as resident-defendants do not enjoy that same option. *See Gasperini*, 518 U.S. at 428.[24] This concern makes sense in the context of this case. While the Court must consider the effects of failing to apply (or applying) the rule on citizens of the forum State, *this Defendant* is *not* a citizen of the forum State. And unlike this Defendant, a resident-defendant (a) could not have removed a tort case to federal court, and consequently, (b) could not have *avoided* case evaluation, which is mandatory in state court *prior to* an award under the offer-of-judgment provision. Thus, as evidenced here, the *application of* the rule may actually more likely result in "unfair[] discriminat[ion] against citizens of the forum State." *See id.*

---

[23] *But see Johnson*, 47 F.3d at 1175 ("We think, however, that there are compelling reasons to conclude, contrary to the opinion of the drafters of Western District of Michigan Local Rule 42, that the Michigan mediation process . . . is 'procedural' and not 'substantive,' and thus is not, under *Erie*, applicable in this diversity case.") (construing a previous version of the case-evaluation rule, which remains alike in material respects); *see Tiedel*, 865 F.2d at 94 ("[A] district court is not empowered to enact a local rule giving itself the authority to award attorneys' fees."); *cf. Mencer*, 228 F.3d at 636–37 ("This case is different [than *Tiedel*]. Here, plaintiffs requested that their claim be referred to mediation. . . . In their request for mediation, signed by counsel, the parties agreed to be bound by the state mediation rules.") ("Unlike *Tiedel*, the trial court here did not rely on its 'inherent power' to grant mediation sanctions. The trial court was instead authorized by the consent of the parties."). Here, there was no such agreement to be bound by state rules, and thus the Court *could neither force the parties to go to case evaluation nor award fees under state mediation rules*, according to *Tiedel*, 865 F.2d at 94, and recognized by *Mencer*, 228 F.3d at 636–37. Likewise, there was no agreement to be bound by state rules with respect to the offer-of-judgment provision.

[24] At first blush, framing the question in this manner is counterintuitive to that which *Gasperini* announces; however, if courts must consider whether "the failure to apply the [rule] would unfairly discriminate against citizens of the forum State," surely they must also consider whether "the [*application of*] the rule would unfairly discriminate against citizens of the forum State." *See id.*

### III.   CONCLUSION

The Court holds that Michigan Court Rule 2.405 is a rule of procedure that has no proper application in federal court. Thus, the Court **DENIES** Defendant's motion for fees and costs[25] pursuant to that rule.

### ORDER

For the reasons contained in the accompanying opinion, the Court **DENIES** Defendant's motion for fees and costs (ECF No. 57) and **DISMISSES AS MOOT** Plaintiff's motion to disallow Defendant's claimed costs (ECF No. 61).

**IT IS SO ORDERED.**

Date:   February 26, 2016          /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge

---

[25] Defendant did not move for costs consistent with the Federal Rules of Civil Procedure. The Court would entertain a renewed motion for costs under the appropriate federal standards and guidance.